**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARVIN HENRY,<br><br>     Plaintiff,<br><br>v.<br><br>TOWN OF NEEDHAM; JOHN SCHLITTLER, individually and in his official and supervisory capacities as the Chief of the Needham Police Department; ANDREW CRAY, individually and in his official and supervisory capacities as a police officer for Needham Police Department; COLIN FITZPATRICK, individually and in his official capacity as a police officer for Needham Police Department; NICOLE MCMAHON, individually and in her official capacity as a police officer for Needham Police Department; LEO SCHLITTLER, individually and in his official capacity as a police officer for Needham Police Department,<br><br>     Defendants. | Civ. No. 1:21-cv-11116 |

**COMPLAINT**

1.      On January 25, 2020, four white officers of the Needham Police Department ("NPD") conspired to wrongfully accost, arrest, detain, publicly embarrass, and defame Marvin Henry, a law-abiding father of four young children who was simply trying to buy an iced tea and cough drops at CVS on his way to work to earn a paycheck for his family. The officers had no legitimate reason for their conduct. While NPD had received a call about possible shoplifting at the CVS by a male and female, the description of the male suspect did not remotely match Mr. Henry, who was unaccompanied by a female. They shared only one feature: they were both Black men.

1

2.     Sadly, that was enough to motivate the officers' conduct.  Quite literally, Mr. Henry's only "crime" was being Black while shopping in a white neighborhood, patrolled by white police officers.  And for that crime, Mr. Henry was forced to endure unlawful arrest and ongoing public embarrassment not only at the scene, but in the days and weeks that followed, as the Defendants published false allegations against Mr. Henry and "investigated" absurd possible crimes in the hope of justifying their misconduct.  To this day, over a year and a half after the incident, none of the officers involved have apologized, much less offered to make Mr. Henry whole.  So, Mr. Henry is left with no choice but to seek justice—justice to compensate him fairly, and to ensure that no other citizen experiences racial animus from NPD.

3.     The evidence will show that when the Defendant officers confronted Mr. Henry, they forcibly shoved him against his vehicle; roughly handcuffed him in full view of passersby within blocks of his workplace; refused to loosen his restraints despite Mr. Henry's repeated attempts to tell them the handcuffs were hurting him; and ignored Mr. Henry's attempts to show a receipt for his purchases that would have immediately demonstrated he was a store customer, not a shoplifter.  They presumed him guilty because he was Black.  White people do not get treated this way.

4.     As the Defendant officers deprived Mr. Henry of his freedom, they also deprived him of his dignity.  One officer openly mocked Mr. Henry; another refused to give Mr. Henry his badge number.  Despite his unjust treatment, Mr. Henry remained compliant.  He was not armed; he did not pose any threat to the officers.  Nevertheless, Mr. Henry knew all too well what could happen to him, a Black man, if he resisted arrest or gave the white officers any opportunity to allege that he was violent or dangerous.

2

5.    The Defendant officers searched Mr. Henry; the contents of Mr. Henry's vehicle, including Mr. Henry's backpack; and ran his license plate.  They were determined to find evidence of his criminality, but they found nothing.  Only after detaining Mr. Henry for nearly half an hour and illegally searching his car did the officers release him, promising that Mr. Henry would hear from them once they pressed charges.  Physically hurt and traumatized by the event, Mr. Henry asked for the police report.  When NPD finally released the report, it was filled with blatant lies.  NPD alleged that he was a serial shoplifter and had successfully robbed the CVS by his workplace at least twice.  The NPD officers had no evidence for these accusations.  In fact, they had decided that Mr. Henry had to be guilty of something and the officers concocted an outrageous and false theory of criminality to justify the arrest.

6.    Once Mr. Henry shared his story, the public cried out, pressuring the Town of Needham to undertake an independent investigation of the Defendant officers' conduct, in addition to NPD's own internal affairs investigation.  Throughout these investigations, the same officers lied in an effort to cover up their illegal targeting and demeaning treatment of Mr. Henry.  Predictably, the NPD internal investigation yielded no reforms—proving that the Department believes it acted rightfully and will not change without outside intervention.

7.    Having been deprived of his rights under state and federal law, Mr. Henry seeks to recover damages for the harm the Defendant officers and Town inflicted, as well as the removal of all defamatory materials published on the Town of Needham website and injunctive relief to address the bias-based policing of NPD through training and policy reviews.  In this moment of racial reckoning, Mr. Henry prays that this Court holds the Town of Needham and NPD accountable for perpetuating race-based policing and colluding to protect white officers

who violate the rule of law.  Without accountability, the Defendant officers and the Town of Needham continue to pose a threat to Black people living and working in Needham.

8.      By this civil action, Plaintiff Marvin Henry seeks redress for violations of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983; for civil rights conspiracy pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3); for Mr. Henry's detention and subsequent mistreatment by Defendants pursuant to M.G.L. ch. 12, §§ 11H-I; and pursuant to Massachusetts common law.

9.      Mr. Henry alleges all facts in this complaint on his personal knowledge or on information and belief.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over the federal claims concerning violations of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1985(3).  This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over the related claims under state law.

11.      Venue is proper in this judicial district under 28 U.S.C. § 1391, because the events giving rise to this civil action occurred in this judicial district.

12.      This Court has personal jurisdiction over Defendant Town of Needham, a municipality within the Commonwealth of Massachusetts, and over all individual Defendants because they reside in the Commonwealth of Massachusetts and they are employed by the Town of Needham, a municipality within the Commonwealth of Massachusetts.

## PARTIES

13.      Plaintiff Marvin Henry is a Black man who works as a licensed massage therapist at Elements Massage in Needham, Massachusetts.

14.     Defendant Town of Needham is a municipality duly organized and existing under the laws of the Commonwealth of Massachusetts.

15.     Defendant John Schlittler is an employee of the Town of Needham, serves as the Chief of Police of the Needham Police Department ("NPD"), and supervises all NPD employees, including Defendants Andrew Cray, Colin Fitzpatrick, Nicole McMahon, and Leo Schlittler. John Schlittler acted in a supervisory capacity and as an agent, servant, and employee of the Town of Needham.  This action asserts claims against John Schlittler in his supervisory, official, and individual capacities.

16.     Defendant Andrew Cray is an employee of the Town of Needham and serves as an NPD police officer.  Cray is a Sergeant in NPD and acted in a supervisory capacity and as an agent, servant, and employee of the Town of Needham at all relevant times.  This action asserts claims against Cray in his supervisory, official, and individual capacities.

17.     Defendant Colin Fitzpatrick is an employee of the Town of Needham and serves as an NPD police officer.  At all relevant times, Fitzpatrick acted as an agent, servant, and employee of the Town of Needham.  This action asserts claims against Fitzpatrick in his official and individual capacities.

18.     Defendant Nicole McMahon is an employee of the Town of Needham and serves as an NPD police officer.  At all relevant times, McMahon acted as an agent, servant, and employee of the Town of Needham.  This action asserts claims against McMahon in her official and individual capacities.

19.     Defendant Leo Schlittler is an employee of the Town of Needham and serves as an NPD police officer.  At all relevant times, Leo Schlittler acted as an agent, servant, and

employee of the Town of Needham.  This action asserts claims against Leo Schlittler in his official and individual capacities.

## FACTUAL ALLEGATIONS

**Mr. Henry Made a Routine Purchase at CVS on January 25, 2020.**

20.     On the afternoon of January 25, 2020, Mr. Henry drove into Needham for a shift at Elements Massage from his home in Hyde Park, Massachusetts, in a light blue Honda Odyssey minivan that he co-owns with his wife, titled in her name.

21.     Mr. Henry wore a black hoodless jacket over a crewneck sweater, light-colored pants, and a knitted cap.

22.     Mr. Henry parked the minivan in front of the Starbucks located at 910 Highland Avenue, in Needham, Massachusetts.  Mr. Henry proceeded to order lunch from the Town House of Pizza at 892 Highland Avenue, as was his routine on his way to work, and then walked to CVS store # 2128 (the "CVS") located at 936 Highland Avenue. Elements Massage is located at 855 Highland Avenue in Needham and is approximately 0.1 miles from the CVS.

23.     Mr. Henry entered CVS at approximately 3:01 p.m. through the Highland Avenue door.  Mr. Henry selected cough drops and an iced tea and completed his purchase of those items with a cashier whom he recognized from prior visits.  He received his receipt by email on his cell phone at about 3:04 p.m.

24.     Mr. Henry exited the CVS at about 3:05 p.m. and walked to the Town House of Pizza, where he picked up his lunch order, and then returned to his minivan.

**The CVS Operations Manager Provided Descriptions of Two Suspects, Neither of Whom Matched Mr. Henry's Description, in a 911 Call to NPD.**

25.     Another Black man ("John Doe") entered the CVS before Mr. Henry, at about 2:53 p.m.  John Doe wore a dark hooded jacket, a light grey hooded sweatshirt, black pants, and

a dark baseball cap. A Black woman ("Jane Doe") entered the CVS shortly after John Doe. Both John Doe and Jane Doe acquired shopping carts.

26.     The CVS Operations Manager told the CVS General Manager that he thought he recognized John Doe and Jane Doe from two previous shoplifting incidents in that CVS.

27.     The CVS Operations Manager called NPD at about 3:04 p.m. to report the suspected shoplifting and described the two subjects to the 911 operator.

28.     The Operations Manager spoke with Officer William Kelleher, the 911 operator who answered the call, about the suspected shoplifting.

29.     As to the first subject, the Operations Manager described a big male, Black, who was wearing a hoodie or hat which was brown, red, or grey. As to the second subject, the Operations Manager described a Black female wearing black or dark clothes.

30.     Officer Kelleher radioed to responding officers that the subjects were a very large Black male with a grey hoodie and a female wearing dark clothes.

31.     John Doe exited the CVS shortly after Mr. Henry.

32.     John Doe did not make any purchases in the CVS on January 25, 2020.

33.     The CVS did not find that any items had been stolen from the store after Mr. Henry, John Doe, and Jane Doe left on January 25, 2020.

**Needham Police Falsely Identified Mr. Henry as the Male Shoplifting Suspect, Even Though He Did Not Match the Description of John Doe.**

34.     In response to the 911 call, at approximately 3:07 p.m. on January 25, 2020, Defendants Fitzpatrick and McMahon entered the CVS.

35.     Defendant Leo Schlittler responded in a marked police vehicle to the intersection of Highland Avenue and West Street at approximately 3:08 p.m.

36.     Defendant Fitzpatrick exited the CVS and began walking down Highland Avenue. Defendant Fitzpatrick radioed Defendant Leo Schlittler, falsely indicating that Mr. Henry was the suspected male shoplifter.

37.     After placing his purchased items on the front passenger seat of his minivan, Mr. Henry walked around to the driver's side of the car and heard a police officer, Defendant Leo Schlittler, yell, "Hey you, come here!" from behind him.

38.     The only way in which Mr. Henry matched the description of the suspect was his skin color, but Defendant Leo Schlittler—without valid legal basis to do so—accosted Mr. Henry outside of his minivan and detained him.

39.     Defendant Fitzpatrick and Defendant Leo Schlittler profiled and confronted Mr. Henry because of his race.

**Mr. Henry Was Forcibly Arrested Without Probable Cause.**

40.     Immediately upon approaching Mr. Henry, Defendant Leo Schlittler pushed Mr. Henry against his minivan, simultaneously grabbing Mr. Henry's right hand and arm.

41.     Defendant Leo Schlittler handcuffed Mr. Henry forcibly behind his back, not telling Mr. Henry why he was under arrest.

42.     At no point did Mr. Henry resist Defendant Leo Schlittler.  Nor did Mr. Henry give Defendant Leo Schlittler any reason to use physical restraints.

43.     Mr. Henry was unarmed and had nothing in his hands.

44.     Defendant Leo Schlittler searched Mr. Henry's pants pockets and outer clothing after handcuffing him.

8

45.     Defendant Fitzpatrick did not attempt to confirm whether Mr. Henry was the individual identified by the CVS Operations Manager or if he matched the description given by the CVS Operations Manager.

46.     Defendant McMahon called in the license plate number of the minivan Mr. Henry had placed his purchases in.

47.     Defendant Cray thereafter joined Defendants Fitzpatrick and Leo Schlittler at the scene.

48.     Defendant Cray stated his support for the decision to continue to detain Mr. Henry, who was still in handcuffs.

49.     Mr. Henry repeatedly told Defendants Leo Schlittler, Fitzpatrick, and Cray that his metal handcuffs were too tight and asked for them to be adjusted, but the officers ignored him.  At no point did any of the Defendant officers check the tightness of the handcuffs or otherwise address this concern.

50.     Defendant Cray went inside the CVS and spoke to Defendant McMahon and the CVS Operations Manager and Store Manager who confirmed that they had not seen John Doe and Jane Doe steal anything from the store that day.

51.     Throughout his detention, Mr. Henry asked the Defendant officers why they were detaining and restraining him.  The Defendant officers refused to answer Mr. Henry for half an hour, when Defendant Cray left the CVS and told Mr. Henry that he was suspected of shoplifting, even though Defendant Cray had learned that no shoplifting took place that day.

52.     Mr. Henry offered to show a copy of the receipt for his CVS purchases, which was on his phone.  Defendants did not immediately accept this offer, which would have dispelled any suspicion, and instead continued to detain him, ignoring the proof of Mr. Henry's innocence.

53.     During this encounter, four officers—Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler—confronted Mr. Henry.  None of them told Mr. Henry why he was detained or restrained for about 30 minutes; none of them read him his *Miranda* rights; none of them let him call his employer to explain why he was late.

54.      Instead, Mr. Henry was held in the vicinity of his workplace, without explanation and without basis, even though Mr. Henry did not match the description of the suspect, was not accompanied by a woman, and even after CVS could not substantiate that any shoplifting whatsoever had occurred.  Mr. Henry was humiliated, and he was concerned that his public detention—in full view of a busy Starbucks and the people of Needham—would affect his ability to get clients as a massage therapist by undermining his clients' trust in him.  Mr. Henry would not have been mistreated in this way if he was not Black.

55.     Compounding the harm to Mr. Henry, Defendant Fitzpatrick cruelly told Mr. Henry that Defendant Fitzpatrick would apologize if Mr. Henry was not on the CVS surveillance footage.  Defendant Fitzpatrick knew that Mr. Henry had already said that he had been in the CVS that day.  And Defendant Fitzpatrick knew that this was a hollow, condescending statement because simply being on the video had nothing to do with whether Mr. Henry was a shoplifter.

56.     Defendant Cray ultimately made the decision to release Mr. Henry after his arrest.

57.     When Mr. Henry asked for the Defendant officers' information, Defendant Cray, a Sergeant in NPD, walked away without giving Mr. Henry his badge number.

58.     Defendant Schlittler cleared the scene at approximately 3:35 p.m.

59.     Mr. Henry was held for approximately 30 minutes, handcuffed in public view, and arrested without justification, by Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler, because of racial bias.

10

**Mr. Henry's Person, Car, and Backpack Were Unlawfully Searched.**

60.    After Defendant Leo Schlittler confronted Mr. Henry, shouted at him, grabbed him, shoved him against the vehicle, and forced his hands behind his back, Defendant Leo Schlittler continued to detain and restrain Mr. Henry without adjusting the handcuffs. Defendants Leo Schlittler and Fitzpatrick also searched Mr. Henry's person, car, and backpack.

61.    Mr. Henry was in a coercive situation, surrounded by armed police officers and in handcuffs.  He was not armed, and there was no reason for the Defendant officers to believe he was armed.  Mr. Henry did not pose any threat to the Defendant officers.  But the Defendant officers unlawfully searched his person, his car, and his backpack inside his car anyway.

**Defendants McMahon and Cray Failed to Consider Evidence During Mr. Henry's Detention.**

62.    Defendants McMahon and Cray also had an opportunity to review CVS footage showing John Doe and Jane Doe with shopping carts inside the CVS and that there had been two Black males in the store, confirming Mr. Henry's innocence, during his detention.  Defendants McMahon and Cray did not do so.  Instead, as evidence of Mr. Henry's innocence mounted, they ignored it.

63.    Defendants McMahon and Cray failed to investigate or consider evidence that conflicted with their belief that Mr. Henry was a criminal.

64.    The CVS Operations Manager and Store Manager both conveyed that Defendants Cray and McMahon did not review the CVS footage from January 25, 2020 during Mr. Henry's detention.

**NPD Denied Mr. Henry's Request for Details Pertaining to His Arrest.**

65.    Mr. Henry submitted a public records request for details as to his arrest on January 25, 2020, but NPD denied his request on January 27, 2020 without satisfactory explanation.

**Defendants McMahon and Cray Invented a False Theory of Mr. Henry's Criminality.**

66.    Determined to find Mr. Henry guilty of some offense, Defendants Cray and McMahon conspired to pursue a follow-up investigation of Mr. Henry subsequent to his release. Defendant McMahon, with, at the direction of, and under the supervision of Defendant Cray, began pursuing an invented theory of criminality related to Mr. Henry.

67.    In her follow-up investigation on or around January 30, 2020, Defendant McMahon reviewed the footage of CVS shoplifting incidents from months prior, specifically footage from August 4, 2019 and October 19, 2019, the dates that the CVS Operations Manager had provided for the prior incidents.  Defendant McMahon falsely summarized her findings in the police report—that Mr. Henry was the male perpetrator of both 2019 shoplifting incidents and that he was assisted by Jane Doe in all three incidents.  In fact, as NPD would later admit, Mr. Henry did not appear in the video footage reviewed by Defendant McMahon at all.

68.    Defendant Cray told Defendant McMahon to investigate whether Mr. Henry was both embezzling from his workplace and regularly shoplifting from the CVS.  Defendant Cray instructed Defendant McMahon to ask Mr. Henry's manager at Elements Massage if Mr. Henry was given money to buy products for the business, "which he then pockets and steals the product."  In or around February 2020, Defendant McMahon spoke to the manager at Elements Massage to pursue this line of questioning.

69.     Without any evidence supporting the idea that Mr. Henry had stolen anything at all—from the CVS or from his employer—Defendant Cray fabricated a theory under which Mr. Henry was undertaking deceitful and criminal activity.

70.     This theory was not based on any facts.  The CVS video footage clearly contradicted Defendants Cray and McMahon's theory.  Nevertheless, Defendants Cray and McMahon continued to pursue Mr. Henry for crimes that he did not commit.

**Defendants McMahon and Cray Investigated Mr. Henry's Wife as a Potential Suspect with No Evidence to Support this Theory.**

71.     Defendant McMahon concluded that Jane Doe appeared in the CVS footage from August 4, 2019 and October 19, 2019.  Defendant McMahon wrongly identified Jane Doe as Mr. Henry's wife, the woman to whom Mr. Henry's minivan was registered and who is also employed at Elements Massage.

72.     Defendant McMahon then pursued a false line of investigation based on a theory that Mr. Henry's wife was the perpetrator for all the shoplifting incidents, together with Mr. Henry.  There was no basis for this theory other than Defendant McMahon's racial bias against Mr. Henry.  Her investigation was nothing more than a smear campaign against Mr. Henry and his family, wrongly presuming that a Black man must be a criminal and because there was a Black woman in the vicinity, the woman had to be his wife and she must be his accomplice.

73.     Neither Mr. Henry nor his wife appeared in the footage showing alleged shoplifting from August 4, 2019 and October 19, 2019.

74.     Mr. Henry and his wife are both employed at Elements Massage, but they do not drive into Needham together for their work shifts because one parent stays home to take care of their four young children.

75.     Defendant McMahon showed a still from the CVS footage to the manager at Elements Massage, who confirmed it was not Mr. Henry's wife, again undermining Defendants Cray and McMahon's invented theory of criminality.

76.     The Defendant officers' investigation into Mr. Henry's wife, based solely on her connection to him and their race, has further exacerbated Mr. Henry's distress from his initial arrest.

**Defendants McMahon and Cray Published False and Malicious Libel Of and Concerning Mr. Henry.**

77.     Defendant McMahon reported her observations from the events of January 25, 2020 in an incident report at around 4:28 p.m. on January 25, 2020.

78.     Defendant McMahon modified her report in or around January 30, 2020 - February 3, 2020 to include her notes and false theories about who appeared in the 2019 CVS footage and again on February 7, 2020 to include her notes from her meeting with the manager at Elements Massage.

79.     Defendant Cray approved the police report on February 22, 2020.

80.     Defendants McMahon and Cray's police report contained false and malicious libel.

81.     The false, defamatory, and slanderous statements made by Defendants McMahon and Cray concerning Mr. Henry include, but are not limited to, the following:

      a.     Defendant McMahon claimed that on entering the store she "was immediately met by the [redacted in original] Manager, [redacted in original] who stated Henry had just exited the store on the Highland Avenue side"

      b.     "[Redacted in original] stated he recognized Henry as he was walking down the street (Highland Ave) and confirmed that he was the suspect."

c.  "[Redacted in original] and the [redacted in original] Manager, [redacted in original] stated Henry and [redacted in original] have successfully shoplifted from the store two or three times in the past few months.  They stated they have video footage that has been provided to NPD.  Henry and [redacted in original] were never identified in the past incidents.  [Redacted in original] and [redacted in original] stated Henry and [redacted in original] entered CVS separately from the parking lot side about a minute or two apart.  They stated Henry and [redacted in original] both were on the phone and had individual carts, walking up and down the aisles separately while filling the cars.  [Redacted in original] and [redacted in original] immediately recognized the two from previous shoplifting incidents.  [Redacted in original] stated she followed Henry and [redacted in original] and noticed Henry stopped filling the carts and went to check out/purchase a small amount of product.  Henry and [redacted in original] then exited the store shortly after while leaving their accumulated carts in the middle of the aisles."

d.  "[Redacted in original] and [redacted in original] showed me video footage, which clearly showed Henry and [redacted in original] entering CVS.  [Redacted in original] entered at approximately 2:52pm and Henry entered at approximately 2:53pm."

e.  "[Redacted in original] and [redacted in original] stated the incidents in the past have been almost identical to this one.  Henry and [redacted in original] would usually come on a Saturday around 3:00pm or 4:00pm.  They would both fill up individual carts with very similar items each time.  [Redacted in original] and [redacted in original] stated in the past Henry and [redacted in original] have successfully walked directly out of the store with the carts, which were filled with unpaid items. . . ."

f.  "Henry had the first cart, which included the following items: 2 Listerine bottles, 2 Heals Soften lotion, 4 Palmer Cocoa Butter, 5 Dove body wash bottles…Estimated value $112.87."

82.  Defendants McMahon and Cray falsely identified Mr. Henry as the male shoplifting suspect entering the CVS at 2:53 p.m. when Mr. Henry did not enter the store until 3:01 p.m.

83.  Defendants McMahon and Cray further attached photos to the report, which they recklessly identified as photos of Mr. Henry.  The photos were captured from the CVS video footage and did not show Mr. Henry, but rather John Doe.

84.     Regarding the 2019 shoplifting incidents, Defendants McMahon and Cray continued to falsely and misleadingly refer to the male shoplifting suspect, John Doe, as "Henry," falsely reporting defamatory statements including, but not limited to:

      a.    "Henry enters (CVS Highland Ave door) while talking on the phone" at 4:50 p.m. on Sunday, August 4, 2019.

      b.    "Henry exits (CVS Highland Ave door)" at 5:10 p.m.

      c.    "Henry enters (CVS Highland Ave door) with gray hoodie, dark pants and hat while on the phone."

      d.    "Henry puts items in [redacted in original] cart and both parties interact."

      e.    "Henry is identified as assisting [redacted in original] on 10/19/2019. Both identifications are based on the RMV photos. After Henry placed items in [redacted in original] cart and interacted with [redacted in original] Henry went to the counter to purchase a small amount of items while [redacted in original] left with the unpurchased items out of the CVS Highland Ave door.

      f.    "Photos of Henry and [redacted in original] are attached to this report."

85.     Defendants McMahon and Cray failed to investigate who was responsible for the prior shoplifting crimes that they falsely attributed to Mr. Henry. Had they done so, they would have discovered Mr. Henry was not responsible for either.

86.     On or about July 22, 2020, Defendants McMahon and Cray caused to be published the police report on the Town of Needham website with a statement that, "[i]n the interest of transparency," the Town was releasing an incident report detailing "facts of an incident involving Mr. Henry on January 25, 2020" as well as "the subsequent investigation" and several photos under the subheading "Incident Report Photos Involving Marvin Henry."

87.     The Defendants McMahon and Cray published the defamatory statements and pictures with reckless disregard for their truth, ignoring that several of the pictures were timestamped from 2019 and were unrelated to the January 25, 2020 incident. They also ignored

16

that nothing had been stolen on January 25, 2020 and therefore the pictures of full shopping carts held no significance.

88.     As of the filing of this complaint, these defamatory statements and pictures remain on the Town of Needham's website.

**Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler Conspired to Deprive Mr. Henry of his Civil Rights and Sought to Cover Up their Targeting of Mr. Henry.**

89.     Defendants Cray, Leo Schlittler, McMahon, and Fitzpatrick made conflicting statements to internal affairs and the independent investigators as to several key facts.

90.     These facts included where Defendants were located at various stages of Mr. Henry's detainment and what aspects of it they each observed; how much time passed between Mr. Henry's initial stop and his handcuffing; whether Mr. Henry alerted the Defendants to the pain from the handcuffs; whether Mr. Henry's person was searched; whether Mr. Henry's license plate was run; whether the CVS Operations Manager positively identified Mr. Henry as the suspect before a decision was made to handcuff Mr. Henry; and whether the CVS Operations Manager ever identified Mr. Henry at all.

91.     As one example, Defendant McMahon told the internal affairs investigators that she did review video footage at CVS during the incident on January 25 but subsequently told the independent investigators that she could not recall if she did so.

92.     These inconsistencies and episodes of unreliable reporting reflect the Defendants' intent to cover up the true circumstances of Mr. Henry's unlawful search, false arrest, and the excessive force inflicted on him.

93.     As described above, Defendant Cray also directed Defendant McMahon to pursue a fabricated theory of criminality for Mr. Henry based on no evidence that he had committed any crime whatsoever, much less the scheme that Defendant Cray invented.

17

94.     This subsequent investigation by Defendants Cray and McMahon was an attempt to cover up Defendants Fitzpatrick, Leo Schlittler, and McMahon's targeting and racial profiling of Mr. Henry by conducting a fishing expedition for evidence that he had committed some crime and that therefore Defendants' treatment of Mr. Henry was justified.

95.     Defendant Cray told investigators that he did not have Defendants Leo Schlittler and Fitzpatrick complete an incident report because he did not think one was warranted.  This violated NPD policy to document all arrests made.

96.     This violation of policy was recognized by NPD's internal affairs investigation.

97.     This violation of policy also indicates the Defendants' intent to conceal their targeting of Mr. Henry by withholding facts and refusing to create a record of the Defendant officers' misconduct.

98.      The Town of Needham, through NPD, also failed to explain why they denied Mr. Henry's public records request.  The internal affairs investigators recognized that NPD's response to Mr. Henry's request failed to uphold the guidelines promulgated by the Secretary of State as to records requests.

99.      This violation of policy also shows that Defendants intended and sought to conceal their unlawful conduct in targeting Mr. Henry.

**Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler Failed to Follow Several Department Policies, Showing the Town of Needham and Defendant John Schlittler's Failure to Train and Resulting in Bias-Based Policing.**

100.     Defendants failed to follow several of their own policies, as recognized by the internal affairs investigation and independent investigation reports.  These failures include, but are not limited to, those described below.

101.    Defendant Cray did not have Defendants Leo Schlittler and Fitzpatrick complete an incident report, which violated NPD policy to document all arrests made.

102.    Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler failed to follow NPD's policy against the use of RMV photos to identify suspects.

103.    Defendant McMahon's follow-up investigation did not follow internal policy. Defendant McMahon identified Mr. Henry's wife as Jane Doe and used CVS surveillance footage during a visit to his wife's employer to ask the employer to confirm the woman's identity.  Defendant McMahon did not have any reason to believe that Mr. Henry's wife was involved except that she co-owned the van with Mr. Henry and it was titled in her name, and Defendant McMahon suspected Mr. Henry.  This conduct violated NPD policy on follow-up investigations by patrol officers.

104.    Defendants Leo Schlittler and Fitzpatrick violated NPD policy to treat the public with courtesy and respect.  Defendant Leo Schlittler handcuffed Mr. Henry immediately upon approach, without any conversation or discussion.  Defendant Fitzpatrick taunted and derided Mr. Henry.  Neither Defendant Leo Schlittler nor Defendant Fitzpatrick loosened Mr. Henry's handcuffs when he told them they were too tight.

105.    Defendant Cray violated NPD's policy to provide officer identification upon request.

106.    Defendants Town of Needham and John Schlittler have acted with deliberate indifference to the rights of Mr. Henry, including by failing to train NPD officers.

107.    Defendants Town of Needham and John Schlittler failed to train Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler to follow several NPD policies.

108.     Defendants Town of Needham and John Schlittler also failed to train Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler on the law of searches and seizures and equal protection, causing Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler to violate Mr. Henry's rights.

109.     The failure to train is particularly problematic because of the pattern of biased policing in Needham by NPD.   In general, it is extremely challenging for members of the Needham community to have any visibility into NPD's activities.   A local organization, concerned about the lack of transparency and public metrics about NPD's work in the community, therefore made a public records request in September 2020 for data on NPD's tactics and patterns of law enforcement.

110.     The organization's report, which it released in February 2021 based on the records it received from NPD, makes clear that there is a pattern of bias-based policing by NPD in Needham.[1]   Black, Indigenous, and People of Color are only 16% of Needham's population, and Needham has a Black and Hispanic population of at most 7%.   But Black, Indigenous, and People of Color accounted for 35% of all handcuffings, 35% of all arrests, and 45% of all offenses with criminal charges sought between September 2019 and August 2020.   The statistics also showed an increase in the racial disparity in policing over time.

111.     According to the draft independent investigation report, NPD officers minimized their mistreatment of Mr. Henry, implying that because he was never charged with any crime, he was not harmed.

---

[1] *See generally* Equal Justice in Needham Public Safety Working Group, Race and Policing in Needham: An Analysis of Public Records Request Data (2021), https://drive.google.com/file/d/1qtqE2P7my_-kOJf2DBBGvjYlz6SkmUkU/view.

112.    This attitude fails to recognize the hardship that Mr. Henry experienced during and after his detention and the danger that police encounters pose to people of color, particularly Black men.  As stated by the independent investigators in their draft report, "[m]ore than once during our interviews of NPD officers, we heard words to the effect of, 'Mr. Henry wasn't charged, so…,' as if to infer that his release from arrest without further law enforcement involvement was essentially *no harm, no foul*."  This statement did not appear in the final version of the report.

113.    Mr. Henry's treatment is an example of ongoing bias-based policing in Needham.

**Mr. Henry Continues to Experience Harm As A Result of Defendants' Actions.**

114.    As a result of Mr. Henry's traumatic and painful detention, he is still deeply shaken and upset.  He had to miss his shifts at Elements Massage on January 25 and the subsequent weekend of work as a result of the humiliation, pain, and fear Defendants caused him.

115.    Mr. Henry was initially too traumatized to speak about Defendants' actions.  With the support of his community, he is seeking accountability for the harm that Defendants inflicted on him.

116.    That harm continues to this day, and it will have long-term ramifications for Mr. Henry's life.  Mr. Henry cannot return to the CVS, which he used to visit routinely, because he is worried that he will once again be racially profiled by NPD.  Mr. Henry is fearful every time he is in Needham, where he continues to work, because of NPD's treatment of him, and his knowledge of the danger of race-based policing.  And Mr. Henry continues to struggle with shame, fear, and worry for his four young children.

## CAUSES OF ACTION

### First Cause of Action
### (Violation of Fourth and Fourteenth Amendments:  False Arrest
### pursuant to 42 U.S.C. § 1983)

117.   Mr. Henry realleges and incorporates each and every allegation contained in the preceding paragraphs.

118.   At all relevant times, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler were employed by the Town of Needham and acted "under color of state law" within the meaning of 42 U.S.C. § 1983.

119.   The Defendants arrested Mr. Henry.  The Defendants did not have probable cause to arrest Mr. Henry.

120.   By falsely arresting Mr. Henry, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler deprived Mr. Henry of his clearly established rights under the Fourth and Fourteenth Amendments to be free from illegal seizure.

121.   As a direct and proximate cause of such acts, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler deprived Mr. Henry of his Fourth and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983.

### Second Cause of Action
### (Violation of Massachusetts Civil Rights Act:  False Arrest)

122.   Mr. Henry realleges and incorporates each and every allegation contained in the preceding paragraphs.

123.   Mr. Henry was falsely arrested, which acted as a threat, intimidation, or coercion and forced him to give up his fundamental right to be free of unreasonable seizure.

124.   By the acts and omissions described above, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler deprived Mr. Henry of his clearly established right to be free of

unreasonable seizure as guaranteed under federal and state law in violation of the Massachusetts Civil Rights Act.

### Third Cause of Action
### (Violation of Fourth and Fourteenth Amendments:  Excessive Force pursuant to 42 U.S.C. § 1983)

125.     Mr. Henry realleges and incorporates each and every allegation contained in the preceding paragraphs.

126.     At all relevant times, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler were employed by the Town of Needham and acted "under color of state law" within the meaning of 42 U.S.C. § 1983.

127.     In detaining Mr. Henry, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler jointly and in concert used excessive and unreasonable force against him.

128.     By using excessive and unreasonable force against Mr. Henry, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler deprived Mr. Henry of his clearly established rights under the Fourth and Fourteenth Amendments to be free from excessive and unreasonable force.

129.     As a result of the excessive and unreasonable force that Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler used, Mr. Henry suffered damages.

### Fourth Cause of Action
### (Violation of Massachusetts Civil Rights Act: Excessive Force)

130.     Mr. Henry realleges and incorporates each and every allegation contained in the preceding paragraphs.

131.     Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler used excessive force against Mr. Henry, which acted as a threat, intimidation, or coercion and forced him to give up his fundamental right to be free of unreasonable seizure.

132.     By the acts and omissions described above, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler deprived Mr. Henry of his right to be free of unreasonable seizure as guaranteed under federal and state law in violation of the Massachusetts Civil Rights Act.

**Fifth Cause of Action**
**(Assault and Battery)**

133.     Mr. Henry realleges and incorporates each and every allegation contained in the preceding paragraphs.

134.     By using excessive and unjustified force against Mr. Henry, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler, jointly and in concert, intentionally and without justification or excuse caused Mr. Henry to suffer physical injuries.

135.     As a result of Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler's unjustified physical battery of Mr. Henry, he suffered damages.

**Sixth Cause of Action**
**(Violation of Fourth and Fourteenth Amendments:  Unreasonable Search**
**pursuant to 42 U.S.C. § 1983)**

136.     Mr. Henry realleges and incorporates each and every allegation contained in the preceding paragraphs.

137.     At all relevant times, Defendants Leo Schlittler and Fitzpatrick were employed by the Town of Needham and acted "under color of state law" within the meaning of 42 U.S.C. § 1983.

138.     Defendant Leo Schlittler deprived Mr. Henry of his right to be free from illegal search, without any probable cause of criminality or reasonable suspicion that Mr. Henry was armed and dangerous, by searching his person.

139.     Defendant Fitzpatrick deprived Mr. Henry of his right to be free from illegal search by searching his vehicle and his backpack within the vehicle.

140.    As a direct and proximate cause of such acts, Defendants Leo Schlittler and Fitzpatrick deprived Mr. Henry of his Fourth and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983.

### Seventh Cause of Action
### (Violation of Fourteenth Amendment: Equal Protection
### pursuant to 42 U.S.C. § 1983)

141.    Mr. Henry realleges and incorporates each and every allegation contained in the preceding paragraphs.

142.    At all relevant times, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler were employed by the Town of Needham and acted "under color of state law" within the meaning of 42 U.S.C. § 1983.

143.    Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler detained, falsely arrested, and unjustly treated Mr. Henry on account of his race.  If he had been white, the officers would not have treated him in the manner in which they did, or with the disrespect or force with which they did.

144.    Defendants Cray and McMahon developed and pursued an invented theory of Mr. Henry's criminality based on the fact that Mr. Henry is Black.

145.    The history of bias-based policing in Needham and across America supports the claim that the officers acted intentionally and with bias against Mr. Henry.

146.    As a direct and proximate cause of such acts, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler violated 42 U.S.C. § 1983 by violating his Fourteenth Amendment right to equal protection under the laws.

**Eighth Cause of Action**
**(Violation of Massachusetts Civil Rights Act: Equal Protection)**

147.     Mr. Henry realleges and incorporates each and every allegation contained in the preceding paragraphs.

148.     Mr. Henry was unlawfully arrested because of his race.

149.     Defendant Leo Schlittler therefore coerced and intimidated Mr. Henry and deprived him of his right to equal protection under the laws.

150.     By the acts and omissions described above, Defendant Leo Schlittler violated Mr. Henry's right to equal protection under the laws in violation of the Massachusetts Civil Rights Act.

**Ninth Cause of Action**
**(Violation of 42 U.S.C. § 1983: Civil Rights Conspiracy**
**pursuant to 42 U.S.C. § 1983)**

151.     Mr. Henry realleges and incorporates each and every allegation contained in the preceding paragraphs.

152.     At all relevant times, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler were employed by the Town of Needham and acted "under color of state law" within the meaning of 42 U.S.C. § 1983.

153.     Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler acted in concert to conspire to falsely arrest and use excessive force against Mr. Henry, inflicting a wrong against him.

154.     Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler took overt acts to carry out their conspiracy by arresting Mr. Henry without probable cause and treating him roughly, including by handcuffing him.

155.     Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler's accounts to Internal Affairs and to the independent investigators demonstrate that they were attempting to cover up their race-based targeting of Mr. Henry.

156.     Defendant McMahon and Defendant Cray's fixation on proving Mr. Henry's nonexistent criminality, despite all evidence to the contrary, further demonstrates the existence of the conspiracy.

157.     As a direct and proximate cause of such acts, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler violated 42 U.S.C. § 1983 by conspiring to harm Mr. Henry.

**Tenth Cause of Action**
**(Violation of 1985(3): Civil Rights Conspiracy)**

158.     Mr. Henry realleges and incorporates each and every allegation contained in the preceding paragraphs.

159.     Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler conspired to deprive Mr. Henry of his equal protection of the laws by falsely arresting him and using excessive force against him.

160.     Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler detained, falsely arrested, and unjustly treated Mr. Henry on account of his race.  If he had been white, the officers would not have treated him in the manner in which they did, including by acting with force against him and falsely arresting him.

161.     The history of bias-based policing in Needham supports the claim that the officers acted intentionally and with bias against Mr. Henry.

162.     As a direct and proximate cause of such acts, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler violated 42 U.S.C. § 1985(3).

**Eleventh Cause of Action**
**(Defamation)**

163.     Mr. Henry realleges and incorporates each and every allegation contained in the preceding paragraphs.

164.     Mr. Henry is a private figure under the laws of defamation and libel.

165.     The false statements made by Defendants Cray and McMahon in the police report and Town of Needham website were of and concerning Mr. Henry, defamatory, and made with reckless disregard for their truth.

166.     The defamatory statements made by Defendants Cray and McMahon were published to third parties with the knowledge that such publication would harm the reputation, standing, and employment situation of Mr. Henry.

167.     The statements made by Defendants Cray and McMahon allege that Mr. Henry engaged in criminal conduct, and such allegations, which are false, are per se defamatory.

168.     The statements made by Defendants Cray and McMahon prejudiced Mr. Henry's profession and business and such allegations, which are false, are per se defamatory.

169.     As a proximate cause of the publishing of the false and malicious libel on the Town of Needham website, Mr. Henry's reputation, both personally and professionally, has been greatly damaged and he has been subjected to humiliation, scorn and ridicule, and impaired his standing in the community.

170.     The defamatory statements resulted in damage to Mr. Henry's career and reputation as a massage therapist as well as severe mental anguish and suffering, loss of income, loss of earning capacity, and loss of business opportunities.

**Twelfth Cause of Action**
**(Violation of 42 U.S.C. § 1983: Municipal Liability)**

171.     Mr. Henry realleges and reincorporates each and every allegation contained in the preceding paragraphs.

172.     At all relevant times, Defendants Cray, Fitzpatrick, McMahon, John Schlittler, and Leo Schlittler served as employees of Defendant Town of Needham, and they acted in accordance with a policy or custom of Defendant Town of Needham.

173.     Despite the need for adequate training for police officers responding to 911 calls about alleged crimes in process, Defendant Town of Needham has maintained, and continues to maintain, a policy of providing inadequate training for police officers.

174.     At all relevant times, Defendant Town of Needham knew or should have known that there was a need for such training.

175.     The training currently provided by Defendant Town of Needham is inadequate and discriminatory, because it results in bias-based policing, civil rights violations, excessive use of force, and reckless publication of defamatory statements.

176.     Defendant Town of Needham's policy of providing inadequate and discriminatory training for police officers proximately caused the harms to Mr. Henry in violation of 42 U.S.C. § 1983.

**Thirteenth Cause of Action**
**(Supervisory Liability)**

177.     Mr. Henry realleges and reincorporates each and every allegation contained in the prior paragraphs.

178.     By unlawfully seizing Mr. Henry, using excessive force against Mr. Henry, committing equal protection violations against Mr. Henry, and conspiring to violate his civil

rights, Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler violated Mr. Henry's constitutional rights.

179.    At all relevant times, Defendant John Schlittler, as the head of NPD, supervised Defendants Cray, Fitzpatrick, McMahon, and Leo Schlittler.

180.    At all relevant times, Defendant Cray, as a Sergeant at NPD, supervised Defendants Fitzpatrick, McMahon, and Leo Schlittler.

181.    Defendants John Schlittler and Cray's deliberate indifference and negligent failure to provide adequate training to and supervision of their employees was a direct and proximate cause of the violation of Mr. Henry's rights.

182.    As a result of Defendants John Schlittler's and Cray's deliberate indifference, Mr. Henry suffered damages.

**WHEREFORE**, Mr. Henry requests that this court:

a.    Award compensatory damages against all Defendants;

b.    Award punitive damages against Defendants Cray, Fitzpatrick, McMahon, Leo Schlittler, and John Schlittler;

c.    Award injunctive relief against Needham, including ordering the removal of the defamatory report and any and all other defamatory representations regarding Mr. Henry from its website; enhanced and ongoing training of all NPD officers on implicit bias, de-escalation techniques, report writing, and policy reviews of other investigative best practices;

d.    Award the cost of this action, including reasonable attorney's fees; and

e.    Award such other relief as this Court may deem necessary and appropriate.

## JURY DEMAND

Mr. Henry demands a jury trial on all counts so triable.

Respectfully submitted,

**MARVIN HENRY**

By his attorneys,

<u>Dated: July 7, 2021</u>

*Of Counsel:*

Lauren Sampson (BBO #704319)
Oren Sellstrom (BBO #569045)
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, Fifth Floor
Boston, MA 02110
lsampson@lawyersforcivilrights.org
osellstrom@lawyersforcivilrights.org
617-988-0609

/s/ Timothy J. Perla
Timothy J. Perla (BBO #660447)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
Timothy.Perla@wilmerhale.com

Joanna Howard*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Joanna.Howard@wilmerhale.com

Rieko H. Shepherd*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
Rieko.Shepherd@wilmerhale.com

*Counsel for Plaintiff*

*\*Pro Hac Vice* motion forthcoming