WILMERHALE

May 10, 2022

**Ivan Panchenko**

+1 617 526 6312 (t)
+1 617 526 5000 (f)
ivan.panchenko@wilmerhale.com

**By ECF**

Honorable Allison D. Burroughs
U.S. District Court, District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

    Re:  *Henry v. Town of Needham et al.*, No. 1:21-cv-11116-ADB

Dear Judge Burroughs:

    We write on behalf of Plaintiff Marvin Henry to request the Court's intervention in two discovery disputes as to which the Parties have reached impasse. Although we regret burdening the Court with these disputes, immediate relief is necessary to ensure that the Parties can complete fact discovery by the Court-ordered July 1, 2022 deadline. Should the Court wish to schedule a brief hearing to discuss these issues, we would gladly make ourselves available.

    *First*, Mr. Henry requests that the Court compel Defendants to produce Defendant John Schlittler's personnel file and records pertaining to any complaints or disciplinary actions against him. The record, as well as Defendants' sworn representations, demonstrate that Defendant John Schlittler was involved in numerous matters relevant to Mr. Henry's claims. Moreover, the requested materials are relevant to Mr. Henry's supervisory liability claim insofar as they reflect Defendant John Schlittler's exercise of supervisory authority over the other Defendant Officers.[1]

    *Second*, Mr. Henry requests that the Court compel Defendants to produce communications that Defendants have improperly withheld (or caused third parties to withhold) pursuant to the attorney-client privilege and/or work product doctrine. To begin, the privilege logs Defendants have provided are facially inadequate and do not come close to complying with Fed. R. Civ. P. 26(b)(5)(A). Defendants' inability or unwillingness to substantiate their privilege and work product claims is sufficient grounds to deem such claims waived. Thus, the Court should order Defendants to produce all withheld communications created prior to the commencement of this Action unless Defendants can satisfy the Court that any such communications are protected.

    In addition, the Court should compel Defendants to instruct third-party Natashia Tidwell—an independent investigator hired by Defendant Town of Needham ("Needham" or the "Town")—to produce communications that she has withheld at Defendants' direction. Defendants' claim that the bulk of those communications constitute work product is fundamentally at odds with First

---

[1] In addition to Defendant John Schlittler, the Defendant Officers include Defendants Andrew Cray, Colin Fitzpatrick, Nicole McMahon, and Leo Schlittler.

WILMERHALE

Honorable Allison D. Burroughs
May 10, 2022
Page 2

Circuit precedent. And Defendants by their conduct have waived any attorney-client privilege that may have applied to those communications.

I.   **Background**

   A.   **Mr. Henry's Arrest And The Follow-Up Investigation**

On the afternoon of January 25, 2020, Mr. Henry, a Black man, made the routine trip from his home in Hyde Park to Needham for his shift at Elements Massage, where he works as a massage therapist. First Amended Complaint, ECF No. 28 ("FAC") ¶ 20. Mr. Henry parked his car a few blocks from his workplace, ordered lunch at a local restaurant, and walked down the street to CVS. *Id.* ¶ 22-23. After purchasing cough drops and iced tea, Mr. Henry picked up his lunch and returned to his car. *Id.* ¶¶ 23-24.

As Mr. Henry walked to the driver's side of his car, he was confronted by Defendant Leo Schlittler, who pushed Mr. Henry against his car, grabbed his right hand and arm, forcibly handcuffed him, and conducted a pat-frisk of his body. *Id.* ¶¶ 37-44. Mr. Henry received no explanation as to why he had been handcuffed; nor were the handcuffs removed notwithstanding that Mr. Henry informed the officers that the handcuffs were causing him pain, and that (as Defendants admit) Mr. Henry was compliant and did not resist. *Id.* ¶¶ 42, 49, 53; Answer to Plaintiff's First Amended Complaint, ECF No. 29 ¶ 42. Although the Defendant Officers at the scene (Leo Schlittler, Colin Fitzpatrick, Nicole McMahon, and Andrew Cray) knew that no crime had been committed (by Mr. Henry or anyone else), Mr. Henry remained under arrest for approximately 30 minutes, handcuffed in full view of the public just a stone's throw from his place of employment. FAC ¶¶ 51, 54.

Mr. Henry's unlawful arrest was not the end of Defendants' wrongful conduct. In the months that followed, Defendants Cray and McMahon engaged in a contrived investigation to find some rationale for treating Mr. Henry like a criminal. *Id.* ¶¶ 66-70. Because Mr. Henry is a law-abiding person, the effort unsurprisingly failed. Then, two days after Defendant John Schlittler's receipt of a July 20, 2020 letter from Mr. Henry's counsel, Defendants caused to be published on the Town's website an incident report purporting to describe the events of January 25, 2020 and Defendants' subsequent investigation of Mr. Henry, including several photographs supposedly depicting Mr. Henry. FAC ¶¶ 77-86. The incident report contained numerous defamatory statements, including falsely attributing to Mr. Henry involvement in several shoplifting incidents that Defendants knew Mr. Henry had not committed. *See id.* And rather than depicting Mr. Henry, the photographs published on the Town's website showed the actual suspected shoplifter, who shares with Mr. Henry two features: both are male and Black. *Id.* ¶ 83.

WILMERHALE

Honorable Allison D. Burroughs
May 10, 2022
Page 3

### B. Mr. Henry's Discovery Requests

On October 12, 2021, Mr. Henry served on Defendants his First Set of Requests for Production (the "Requests") and First Set of Interrogatories (the "Interrogatories"). *See* Exs. A, B.[2] As relevant here, the Requests sought two categories of documents pertaining to the Defendant Officers: (1) their personnel files (Request No. 16) and (2) documents concerning complaints or disciplinary actions against them (Requests Nos. 14, 15). Ex. A at 5. In addition, the Requests sought documents pertaining to Ms. Tidwell's investigation (the "Tidwell Investigation") (Request No. 8). *Id.* at 4. Mr. Henry also issued a subpoena to Ms. Tidwell. Ex. E.

### C. Defendants' Refusal To Produce Materials Pertaining To Defendant John Schlittler

Defendants agreed to produce personnel files and complaint and disciplinary records for all Defendant Officers except Defendant John Schlittler. *See* Ex. C at 6-7. Attempting to justify their decision to withhold Defendant John Schlittler's documents, Defendants claimed that he "ha[d] no personal involvement in Mr. Henry's allegations whatsoever" and was "only sued because of his title." Ex. I at 4.

Defendants' production shows just the opposite. For instance, on July 22, 2020, Defendant John Schlittler received from Defendant McMahon a "revised document" describing what is depicted in CVS surveillance video from January 25, 2020 (the day of Mr. Henry's arrest). *See* Ex. P. Despite Defendant John Schlittler's review of Defendant McMahon's investigative work—which should have made plain that Mr. Henry had engaged in no criminal conduct—Defendant John Schlittler authorized the publication of an incident report identifying Mr. Henry as a serial shoplifter. *See* Ex. Q. And, two months after the incident report was published, Defendant John Schlittler personally acknowledged the inexcusable error by providing a "supplemental narrative" to clarify that Mr. Henry did not appear on surveillance video purporting to depict prior shoplifting incidents. *See* Ex. R.

Defendants' position is also irreconcilable with their responses to Mr. Henry's Interrogatories, which similarly confirm (under penalty of perjury) that Defendant John Schlittler was involved in matters relevant to Mr. Henry's claims, including "a discussion regarding publication of" the defamatory incident report, "interviewing/hiring" Ms. Tidwell, providing her with documents, and "communicating" investigatory "findings to the public." Ex. D at 4-5.

On March 25, 2022, Mr. Henry informed Defendants in writing that their position with respect to Defendant John Schlittler was untenable. *See* Ex. J. Defendants did not respond to Mr. Henry's letter. Then, during a telephonic conference on April 1, 2022, Defendants confirmed that

---

[2] All exhibits are attached to the accompanying Declaration of Ivan Panchenko ("Panchenko Decl.").

WILMERHALE

Honorable Allison D. Burroughs
May 10, 2022
Page 4

they would not produce materials pertaining to Defendant John Schlittler.  *See* Panchenko Decl. ¶ 7; *see also* Ex. O at 4, 6.

### D. Defendants' Assertions Of Attorney-Client Privilege And Work Product

To date, Defendants have produced six privilege logs (the "Privilege Logs"), four describing documents withheld from their production ("Defendants' Logs") and two describing documents that Defendants directed Ms. Tidwell to withhold from her production (the "Tidwell Log" and the "Tidwell E-Files Log").

In all, Defendants have withheld or caused Ms. Tidwell to withhold **over 2,000** documents and communications based on little more than their say-so that the communications are protected. Defendants' Logs contain 1,275 entries, a staggering number considering that Defendants have produced only 1,057 emails.  *See* Panchenko Decl. ¶ 6.[3]  Defendants' Logs include several categories of basic metadata, identify the claimed privilege or protection, and purport to explain the basis for the claim.  Defendants' supposed explanations, however, amount to circular assertions that communications have been withheld as privileged or work product because they are privileged or contain work product.  For instance, nearly **900** entries on Defendants' Logs assert that communications were withheld because they "[c]ontain[] Attorney Client Communications regarding legal advice."  *See, e.g.*, 461 Privilege Log Nos. 2-8.  Similarly, most documents withheld as work product are described as "[c]ontain[ing] protected work product created in anticipation of litigation."  *See, e.g.*, 888 Privilege Log Nos. 68, 77, 171.[4]

The Tidwell Log, in turn, contains 926 entries (against 188 emails produced) and indicates that the Defendants have caused Ms. Tidwell to withhold 556 communications based on the work product doctrine, 31 communications based on the attorney-client privilege, and 339 communications on both grounds.  *See* Panchenko Decl. ¶ 4; *see also* Ex. F.  Regardless of the privilege or protection asserted, however, the purported basis for withholding for *each* of the 926 entries is identical: "Concerning Preparation of Final Report with Legal Advice to Town of Needham."  *See* Ex. F.  The Tidwell E-Files Log identifies a further 115 documents withheld from production, including what appear to be draft and final versions of Ms. Tidwell's report, which the Town published on its website.  *See* Ex. G.

During an April 1, 2022 telephone conference, Defendants indicated that they would stand on their assertions of privilege and work product with respect to the Tidwell Investigation.

---

[3] Three of Defendants' Logs are identified by number, and this letter refers to each log by its numerical identifier: the 461 Privilege Log (Ex. K), the 888 Privilege Log (Ex. L), and the 967 Privilege Log (Ex. M).  Because the entries in Defendants' Logs are not sequentially numbered, references to specific entries in this letter are to the row in which the entry appears in the relevant log.

[4] In addition, seventeen entries in the 461 Privilege Log contain no text in the "Basis of Privilege" column. *See* 461 Privilege Log Nos. 63, 137-139, 141-142, 144-145, 188, 200, 218-219, 227, 247, 255-256, 269.

WilmerHale

Panchenko Decl. ¶ 7.  The Parties agreed that Mr. Henry would move to compel those materials.  *See id.*; *see also* Ex. O at 4, 6.  Mr. Henry later conveyed in writing that he intended to raise with the Court the Privilege Logs' other infirmities and offered to meet and confer.  *See id.* at 3.  Defendants responded that they "view the privilege logs as fully compliant with the Defendants' obligations under the Federal Rules, and do not intend to create a new or supplemental privilege log."  *See id.* at 1.  Defendants claimed to offer "to respond to any reasonably specific inquiry" regarding "particular entr[ies] on the privilege log" (*id.*), but given the Privilege Logs' systemic deficiencies, a discussion concerning particular entries is impractical.

Mr. Henry now moves to compel the wrongly withheld materials.

## II.  Defendants Must Produce Documents Pertaining To Defendant John Schlittler

Defendants' refusal to produce relevant materials pertaining to Defendant John Schlittler evinces a willful disregard of their obligations under Rule 26, and Defendants have not articulated—because they cannot—any basis for their intransigence.

Under Fed. R. Civ. P. 26, Mr. Henry is entitled to "***any*** nonprivileged matter that is relevant to any party's claim or defense."  *Id.*  (emphasis added).  "Rule 26 contemplates liberal discovery and a broad concept of relevance," subject to considerations of proportionality.  *Controlled Kinematics, Inc. v. Novanta Corp.*, 2019 WL 3082354, at *6 (D. Mass. July 15, 2019) (internal quotation marks omitted).  If requested materials are relevant, they must be produced unless the party opposing production "shows that the requested discovery is improper."  *United States ex rel. Long v. Janssen Biotech, Inc.*, 2022 WL 488493, at *3 (D. Mass. Feb. 17, 2022).

The materials Mr. Henry seeks plainly satisfy Rule 26.  Defendants' document production and sworn representations demonstrate Defendant John Schlittler's involvement in matters that are critical to Mr. Henry's claims.  *See* Sec. I.C, *supra*.  Moreover, the requested materials are unquestionably relevant to Mr. Henry's supervisory liability claim to the extent they shed light on Defendant John Schlittler's supervision of the other Defendant Officers who violated Mr. Henry's constitutional and statutory rights.  *See Green v. Fulton*, 157 F.R.D. 136, 141 (D. Me. 1994) (compelling production of police chief's personnel file because "documents relating to his conduct as a police officer would also be directly relevant to the plaintiff's claim of supervisory liability" and could "reveal the extent to which [the chief] knew of the past misconduct of his subordinates").[5]  Defendants' sole claimed basis for refusing to produce the requested materials—

---

[5] *See also, e.g.*, *Estate of Shafer ex rel. Shafer v. City of Elgin*, 2014 WL 1303095, at *3 (D. Or. Mar. 28, 2014) (granting motion to compel personnel file of police chief where plaintiff alleged "a history of indifference to the use of force in the [] police department" and lack of "training[,] investigating, monitoring and disciplining officers regarding the use of force"); *Floren v. Whittington*, 217 F.R.D. 389, 391 (S.D.W. Va. Oct. 2, 2003) (granting motion to compel personnel and internal affairs files for all officers serving during certain period where plaintiff asserted claims of municipal liability).

that Defendant John Schlittler "ha[d] no personal involvement in Mr. Henry's allegations whatsoever" (Ex. I at 4)—is therefore both incorrect and irrelevant.

Because Defendants cannot demonstrate that Mr. Henry's requests are improper, the Court should compel them to produce requested materials concerning Defendant John Schlittler.

### III. Defendants Capacious Privilege And Work Product Claims Are Improper

#### A. The Privilege Logs Are Woefully Inadequate

As an initial matter, Defendants have failed to satisfy Rule 26(b)(5)(A)'s command that a party withholding materials based on a privilege or protection must describe the withheld materials "in a manner that . . . will ***enable other parties to assess the claim***." *Id.* (emphasis added). To satisfy Rule 26(b)(5)(A), parties must provide "a detailed description of the documents to be protected with precise reasons given for the particular objection to discovery." *Corvello v. New England Gas Co.*, 243 F.R.D. 28, 33 (D.R.I. 2007) (internal quotation marks omitted). "[A] blanket assertion of the privilege is insufficient." *Neelon v. Krueger*, 2015 WL 1037992, at *3 (D. Mass. Mar. 10, 2015). Here, however, that is all Defendants have offered. *See* Sec. I.D, *supra*.

Moreover, even a cursory review of the Privilege Logs demonstrates that there is significant cause for concern that Defendants have improperly withheld countless documents.

- Nearly half the entries on Defendants' Logs reflect communications withheld because they include Town Counsel Tom Harrington or one of his colleagues. But because Defendants' Logs fail to provide ***any*** information regarding the basis for Mr. Harrington's involvement, it is impossible to discern whether he was included on communications to provide legal advice, to provide non-legal advice, or simply to give communications a veneer of attorney-client privilege. *See ACQIS, LLC v. EMC Corp.*, 2017 WL 2818984, at *2 (D. Mass. June 29, 2017) (communication must "seek[] . . . legal advice" from a "professional legal adviser in his capacity as such"); *cf. City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 9 (D. Mass. 2000) ("[A]n in-house lawyer may wear several . . . hats (e.g., business advisor, financial consultant) and because the distinctions are often hard to draw, the invocation of the attorney-client privilege may be questionable in many instances.").

- Over 200 entries on Defendants' Logs do not include an attorney—a quintessential requirement of the attorney-client privilege.[6] Defendants' conclusory assertion that these communications "contain[] a Town attorney with Town employees seeking legal advice in the body of the text and/or the body of the email contains something a Town employee

---

[6] Certain of those entries reflect communications with two members of the Needham Select Board who are attorneys. Absent information in Defendants' Logs to the contrary—such as an assertion that those individuals acted as attorneys—Mr. Henry assumes that they were included on communications in their capacity as elected officials.

WILMERHALE

Honorable Allison D. Burroughs
May 10, 2022
Page 7

communicated to a Town attorney" (*see, e.g.*, 461 Privilege Log) does not meet Defendants' burden, particularly because Defendants' Logs fail to identify the "Town attorney" in question. *See SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005) (compelling production of documents as to which privilege log failed to "identify any specific attorney with whom a confidential communication was made"). Moreover, even if these communications contain some information protected by the attorney-client privilege, narrow redaction of that information would suffice. *Sodexomagic, LLC v. Drexel Univ.*, 294 F. Supp. 3d 404, 405 (E.D. Pa. 2018) ("[P]arties should redact the privileged portion of the email chain, rather than withholding production of non-privileged, 'downstream' communications.").

- Although disclosing privileged communications to third parties "is often sufficient to undermine the 'made in confidence' requirement" of the attorney-client privilege (*Cavallaro v. United States*, 284 F.3d 236, 246 (1st Cir. 2002)), numerous entries on the Privilege Logs include readily identifiable third parties.[7] Indeed, Defendants have asserted attorney-client privilege over six communications with **Mr. Henry's counsel**.[8]

- Defendants' Logs describe communications withheld notwithstanding that they concern non-legal matters such as public relations. *See Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) ("It may be that the modern client comes to court as prepared to massage the media as to persuade the judge; but nothing in the client's communications for the former purpose constitutes the obtaining of legal advice or justifies a privileged status.").[9] Other entries reflect documents that on their face are not protected, such as automatic reply emails, emails signaling acceptance of calendar invitations, and emails from Zoom regarding meeting attendance.[10]

Courts in this Circuit and elsewhere have held that a party's failure to "sufficiently explain the basis for the privilege . . . may be grounds for rejecting the claim." *Corvello v. New England Gas Co.*, 243 F.R.D. 28, 33 (D.R.I. 2007).[11] That is the appropriate remedy here. Defendants have

---

[7] *See* 888 Privilege Log Nos. 262, 266-267, 374, 417; 967 Privilege Log No. 141 (emails to and from employees of Cabot Risk Strategies, LLC); Tidwell Log (withholding 82 communications to and from private investigator Joe Desmond).

[8] *See* 888 Privilege Log No. 282; 967 Privilege Log Nos. 173, 193, 333-335, 375 (emails to Lauren Sampson of Lawyers for Civil Rights and Robert Cultice of WilmerHale).

[9] *See, e.g.*, 461 Privilege Log Nos. 138-44, 149, 187-88, 200, 227, 255-56, 264-66, 269; 888 Privilege Log Nos. 37, 70, 74, 129-30, 318, 325-26, 330-31, 334, 360, 366; 967 Privilege Log Nos. 64, 105, 156, 264, 282, 315-16, 318-19, 326, 351-52, 457.

[10] *See* 888 Privilege Log Nos. 297, 399; 967 Privilege Log Nos. 52, 94, 136, 142, 174, 179, 239, 277, 321, 354, 453-54, 496; Tidwell Log Nos. 406, 443-44, 616.

[11] *See also, e.g.*, *United States v. Constr. Prod. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (rejecting "general

**WilmerHale**

Honorable Allison D. Burroughs
May 10, 2022
Page 8

represented that they "do not intend to create a new or supplemental privilege log," Ex. O at 1, nor would it be equitable to allow them to do so. That is true both because Defendants' initial effort is so manifestly improper, and because, with depositions around the corner and the close of fact discovery less than two months away, there is no time to give Defendants a second chance. Accordingly, the Court should require Defendants to produce all withheld communications created prior to the date this Action was commenced unless Defendants can satisfy the Court that any of those communications were properly withheld.

### B. Communications Concerning The Tidwell Investigation Must Be Produced

#### 1. Tidwell Investigation Materials Are Not Work Product

Defendants have failed to show that materials related to the Tidwell Investigation are attorney work product, and the Court should compel the production of all documents and communications withheld on that basis.[12]

The First Circuit has explained that "the focus of work product protection has been on materials prepared for use *in* litigation." *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 29 (1st Cir. 2009) (emphasis added). "It is not enough to trigger work product protection that the subject matter of a document relates to a subject that might conceivably be litigated, . . . . [n]or is it enough that the materials were prepared by lawyers or represent legal thinking." *Id.* The work product doctrine does not protect Tidwell Investigation materials unless: (1) Defendants subjectively anticipated litigation when the materials were created, and that belief was objectively reasonable; (2) the materials were not prepared for non-litigation purposes; and (3) the materials were prepared for use in litigation. *See id.* at 29-31; *United States ex rel. Wollman v. Massachusetts Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 61 (D. Mass. 2020); *Zagklara v. Sprague Energy Corp.*, 2011 WL 13209818, at *2 (D. Me. June 22, 2011). Defendants cannot satisfy these requirements.

Defendants have offered no basis on which this Court could conclude that they anticipated litigation when they commissioned the Tidwell Investigation in September 2020. *See Wollman*, 475 F. Supp. 3d at 64 ("Contemporaneous evidence is the most compelling in determining the purpose for retention of counsel."). Nor would such a claim be objectively reasonable in the circumstances, as Mr. Henry had not mentioned—let alone threatened—litigation by September

---

allegations of privilege . . . not supported by the information provided"); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) ("[I]f the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.").

[12] Defendants claim work product protection over 556 communications and 90 documents in Ms. Tidwell's possession. *See* Tidwell Log; Tidwell E-Files Privilege Log. Defendants have withheld from their production on work product grounds a further 15 communications that appear to relate to the Tidwell Investigation. *See* 461 Privilege Log No. 63; 888 Privilege Log Nos. 68, 91-92, 171, 175-77, 192, 237, 400; 967 Privilege Log Nos. 490, 508, 517-18.

WILMERHALE

Honorable Allison D. Burroughs
May 10, 2022
Page 9

2020, and did not commence the Action until almost one year later.[13] Even if Defendants reasonably anticipated litigation, their public statements and the engagement letter with Ms. Tidwell's firm make clear that Defendants commissioned the Tidwell Investigation for non-litigation purposes, including to "improve police practices, policies or procedures." Ex. T; *see also* Ex. S. The Town boasted of Ms. Tidwell's experience "overseeing implementation of reforms to [Ferguson, Missouri]'s police department" and represented that she would be tasked with "review[ing] Needham Police Department policies that relate to the incident and provid[ing] recommendations" concerning "additional training or other steps the Department should consider to improve its delivery of services, including to communities of color." Ex. U. And when Ms. Tidwell released her final report on March 11, 2021, the Needham Select Board publicly stated that it would be "working with the Needham Police Chief to consider opportunities for improvements to practices and policies." Ex. X. Defendants' consistent narrative regarding the Tidwell Investigation's purposes also undermines any inference that the investigation was undertaken so that Ms. Tidwell's findings or work product could be used in litigation. *See Textron*, 577 F.3d at 29 ("work product protection" applies only to "materials prepared for use *in* litigation" (emphasis added)).

Accordingly, Defendants have failed to establish that any Tidwell Investigation materials are protected work product.[14]

### 2. Defendants Have Waived The Attorney-Client Privilege

To the extent the attorney-client privilege ever protected communications regarding the Tidwell Investigation, Defendants by their actions have waived it. Communications withheld on that basis must therefore be produced.[15]

---

[13] The July 20, 2020 letter Mr. Henry's counsel sent to Defendant John Schlittler makes clear that Mr. Henry wanted to "resolv[e] this incident in the most expeditious manner possible" and hoped to galvanize the Town to take "a constructive approach that protects other members of the Black community from unlawful stops and searches." Ex. Z at 2, 6. Any argument that the July 20 letter caused Defendants to anticipate litigation proves too much. If that were true, Defendants could conceivably assert work product protection over every document and communication created in the letter's wake. As the Privilege Logs make clear, that is not Defendants' position.

[14] Even if the Court were to find that the work product doctrine covers the withheld materials (and it should not), production of those materials would still be warranted because Mr. Henry has "substantial need for [them] . . . and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). The withheld materials could, for instance, reflect contemporaneous proof that Defendants knowingly made false statements regarding Mr. Henry, which bears on Mr. Henry's civil rights conspiracy and defamation claims.

[15] Defendants have withheld (or caused Ms. Tidwell to withhold) 446 communications regarding the Tidwell Investigation based on the attorney-client privilege. *See* Tidwell Log (370 communications); 461 Privilege Log Nos. 50, 63, 125-26; 888 Privilege Log Nos. 15, 68, 78, 91, 125, 131-34, 141, 192, 237, 297, 301, 311-13, 328, 356, 377-78, 391, 400, 428, 441, 449-52; 967 Privilege Log Nos. 32, 36, 46, 93-94, 111, 146, 202, 225, 239, 242, 258, 265, 282, 287, 291-94, 326, 339-40, 384, 391-93, 441, 443, 446, 449-51, 480-81, 490, 494-97, 508, 512, 517-18, 520.

WILMERHALE

Honorable Allison D. Burroughs
May 10, 2022
Page 10

The attorney-client privilege "is not limitless," and it can be waived. *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 23 (1st Cir. 2011). As relevant here, courts have held that parties waive the attorney-client privilege as to investigations by outside counsel by publicly disclosing "substantial detail about both what [the party] and its employees told [counsel] and what advice [the party] received in return." *Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 437 (W.D. Tex. 2017) (holding that university waived privilege as to "entire scope of [outside counsel's] investigation" where it disclosed thirteen-page summary of the investigation and its conclusions and a ten-page list of recommendations).[16]

That is the case here. The Town not only publicly touted Ms. Tidwell's hiring and described the purpose of her investigation (Exs. T, U), it then published on its website two drafts and the final version of her report. Panchenko Decl. ¶ 14; *see also* Exs. V and W. The report reveals extensive details concerning what witnesses (including the Defendant Officers) told Ms. Tidwell and discloses her conclusions and recommendations. That alone suffices to waive the privilege.

In addition, allowing Defendants to withhold materials while reaping the benefits of their partial disclosure would be prejudicial to Mr. Henry. *See Doe 1*, 320 F.R.D. at 440 ("fairness is the critical consideration when evaluating whether a party has waived the attorney-client privilege"). Defendants' proclamations regarding Ms. Tidwell's "independen[ce]" (Ex. U) undoubtedly add a veneer of credibility to her conclusions, which Defendants have used to attempt to exonerate themselves in the eyes of the public. *See* Ex. X (March 15, 2021 Needham Select Board press release characterizing Tidwell Investigation as concluding that "the evidence does not support a finding that the officers racially profiled Mr. Henry"); Ex. Y (March 15, 2021 Needham Police Department press release making statement to same effect).

Moreover, despite Ms. Tidwell's supposed independence, available information suggests that Defendants may have exerted influence over the report's contents. The Tidwell Log reflects 63 communications between Town Counsel Tom Harrington and Ms. Tidwell in the three weeks before her final report was published, 18 of which took place between the publication of the report's initial draft and its final version. Those communications include numerous emails from Mr. Harrington with the subject line "one more request." *See* Tidwell Log Nos. 46, 51, 54, 61, 253, 255, 258-59, 260, 262, 266, 275-76. Notably, the final version of Ms. Tidwell's report includes additional statements favorable to Defendants that do not appear in the initial draft. *Compare* Ex. W at 39 (observing that "policies, as written, are largely consistent with best

---

[16] *See also, e.g.*, *Schnatter v. 247 Grp., LLC*, 2021 WL 5018741, at *11 (W.D. Ky. Oct. 28, 2021) (party's publication of purportedly privileged report on website resulted in waiver of "any privilege or protection claims over documents and communications related to" report); *Doe v. Hamilton Cty. Bd. of Educ.*, 2018 WL 542971, at *3 (E.D. Tenn. Jan. 24, 2018) (party's public release of outside counsel's report "waived the attorney-client privilege as to the entire scope of the investigation . . . and all materials, communications, and information provided to [outside counsel] as part of her investigation").

WILMERHALE

Honorable Allison D. Burroughs
May 10, 2022
Page 11

practices" and "concur[ring]" that "Mr. Henry's allegation that he was roughly shoved during handcuffing" was unsupported), *with* Ex. V (containing no such statements).  The report's final version also omits text from the initial draft that casts a negative light on the Defendant Officers, such as the observation that the Needham Police Department's characterization of Mr. Henry's arrest as "essentially no harm, no foul" or a "petty indignity" gravely underestimated what Mr. Henry endured.  *Compare* Ex. V at 40, *with* Ex. W at 41.  The withheld communications could shed light on these conspicuous changes.

Put simply, Defendants cannot hide potentially unfavorable evidence behind a cloak of privilege while selectively using protected information for their benefit.  The documents must be produced.

Respectfully yours,

*Ivan Panchenko*

Ivan Panchenko


cc: Counsel of record (by ECF)